

FILED
2020 SEP 9 PM 1:03
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| STEPHEN E.,<br><br>                Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Acting Commissioner of Social Security,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER REMANDING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:19-cv-00062-DAO<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Stephen E. ("Mr. E")[1] filed this action asking the court to remand the Acting Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits under Title II of the Social Security Act. (Pl.'s Opening Br. ("Pl.'s Br.") 1–2, 20, Doc. No. 16.) The Administrative Law Judge ("ALJ") determined Mr. E did not qualify as disabled. (A certified copy of the transcript of the entire record of the administrative proceedings related to Mr. E (hereafter "Tr. __") 89, Doc. No. 8.) Having carefully considered the parties' memoranda, the relevant legal authority, and the complete record in the matter,[2] the court REMANDS the Commissioner's decision for the reasons set forth below.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court will refer to the Plaintiff by his first name and last initial only.

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

## I.    STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner of the Social Security Administration.  This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards.  42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence.  42 U.S.C. § 405(g).  The substantial evidence standard "requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it."  *Id.* (internal quotation marks omitted).  Rather than mechanically accepting the ALJ's findings, the court will "'examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met.'"  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991)).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'"  *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation*

*Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  Moreover, the court may not substitute its judgment for that of the ALJ.  *Langley*, 373 F.3d at 1118.

In addition, the court reviews whether the ALJ applied the correct legal standards.  The court may reverse where the ALJ fails to do so.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis."); *Thomson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence.").  Sufficient grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).  Put differently, this court may reverse if the ALJ fails to demonstrate reliance on the correct legal standards or fails to adequately explain her reasoning.

## II.     APPLICABLE LAW AND SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-part sequential evaluation.  The analysis requires the ALJ to consider whether:

(1)  The claimant presently engages in substantial gainful activity;

(2)  The claimant has a medically severe physical or mental impairment;

(3)  The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

(4)  The claimant possesses a residual functional capacity to perform his or her past work; and

(5)  The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden, in the first four steps, of establishing the disability.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.  *Id.*

## III.    FACTUAL AND PROCEDURAL BACKGROUND

Mr. E was born on February 28, 1978 and was forty years old on March 31, 2018, the date he was last insured under the Social Security Act.  (Tr. 77, 88.)  He has a GED.  (*Id.* at 103.)  He previously worked as a tile setter, a stock clerk, and a fast food cook.  (*Id.* at 88, 104.)  He alleges disability based on cirrhosis of the liver, ascites, portal vein repairs, encephalopathy, tailbone removal surgery, infections, chronic depression, and chronic pain.  (*Id.* at 264.)

4

Mr. E filed an application for disability insurance benefits in December 2015, alleging disability beginning September 21, 2013.  (*Id.* at 237–40.)  His claim was denied on March 23, 2016.  (*Id.* at 125–35.)  Reconsideration of his claim was denied on June 14, 2016.  (*Id.* at 136–56.)  Mr. E requested a hearing before an ALJ on July 19, 2016.  (*Id.* at 167–68.)  This hearing was held on April 19, 2018.  (*Id.* at 97–124.)

On July 3, 2018, the ALJ found Mr. E not disabled.  (*Id.* at 75–89.)  With respect to step two of the sequential evaluation, the ALJ found Mr. E has the following severe impairments: "degenerative disc disease, diabetes mellitus, depression, hepatic encephalopathy, chronic liver disease/alcoholic cirrhosis, generalized anxiety disorder, bipolar disorder, post-traumatic stress disorder (PTSD), a history of coccygectomy, and gastroparesis."  (*Id.* at 78.)  At step three, the ALJ found Mr. E does not have an impairment or combination of impairments meeting one of the listed impairments.  (*Id.*)  At step four, the ALJ determined that Mr. E has a residual functional capacity ("RFC") for "light work" with the following physical limitations: "lift 10 pounds frequently and 15 pounds occasionally"; "sit throughout an 8-hour day with normal breaks"; "stand and/or walk about 4 hours in an 8-hour day with normal breaks"; "frequently push/pull with lower extremities"; "never climb ladders, ropes or scaffolds"; "occasionally climb stairs or ramps, balance, . . . stoop, kneel, crouch, or crawl"; "tolerate only occasional exposure to work around extreme cold or hazards"; and work in an indoor environment "with access to indoor plumbing."  (*Id.* at 80–81.)  Mentally, the ALJ determined Mr. E can "understand, remember and carry out short, simple instructions;" and is "able to interact appropriately with coworkers and the general public on an occasional basis and [i]s able to respond appropriately to work pressures in a usual work setting" as well as to "changes in a routine work setting."  (*Id.* at 81.)  Given these limitations, the ALJ found Mr. E cannot perform his past work.  (*Id.* at 87–88.)

5

However, in the fifth step in the sequential evaluation, the ALJ found there were "jobs that existed in significant numbers in the national economy that the claimant could have performed" given Mr. E's age, education, work experience, and residual functional capacity. (*Id.* at 88.)

Mr. E appealed the ALJ's decision to the Appeals Council on July 3, 2018. (*Id.* at 1.) The Appeals Council denied his request for review on May 15, 2019, (*id.* at 1–4), making the ALJ's decision final for purposes of judicial review. *See* 20 C.F.R. § 404.981.

## IV.   ISSUES PRESENTED FOR REVIEW

In his challenge to the ALJ's decision, Mr. E makes four arguments. First, he argues the ALJ erred in failing to include "all established limitations" from his chronic liver disease/alcoholic cirrhosis impairment in the RFC assessment. (Pl.'s Br. 8–9, Doc. No. 16.) Second, Mr. E argues the ALJ failed "to properly evaluate the opinions of [Mr. E's] treating sources." (*Id.* at 9.) Third, Mr. E argues that "even if the RFC . . . reflected all of [Mr. E's] limitations," the ALJ's finding that jobs exist in the national economy which Mr. E could adjust to is unsupported by substantial evidence. (*Id.*) Fourth, Mr. E argues the Appeals Council erred in failing to consider additional evidence submitted after the ALJ's decision. (*Id.*)

## V.   ANALYSIS

The court first considers Mr. E's argument that the ALJ erred in failing to account for Mr. E's chronic liver disease/alcoholic cirrhosis impairment in the RFC assessment. The court next considers the issue of whether the ALJ erred in its evaluation of Mr. E's treating physicians' opinions. Given the court's finding that the ALJ erred in failing to properly analyze Mr. E's treating physicians' opinions, as discussed further below, the court declines to address the two remaining issues raised by Mr. E on appeal.

A.   ALJ's Residual Functional Capacity Assessment

Mr. E claims the ALJ erred in two ways with regard to her RFC assessment.  First, he claims the ALJ erred because "no limitation for bathroom breaks was included in the RFC assessment, nor did the ALJ provide any discussion of why such breaks were not included." (Pl.'s Br. 11, Doc. No. 16.)  Next, he argues the ALJ erred by failing to include any limitations in the RFC assessment in the event that Mr. E "suffers from episodes of confusion throughout an 8-hour workday."  (*Id.* at 13.)

A claimant's residual functional capacity ("RFC") reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments.  *See* 20 C.F.R. § 404.1545.  In determining the claimant's RFC, the decisionmaker considers all of the claimant's medically determinable impairments, including those considered not "severe."  *See* § 404.1545(a)(2).  "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"  *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *19 (S.S.A. July 2, 1996)).  An RFC does not represent the "*least* an individual can do despite his or her limitations or restrictions, but the *most*."  Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *5 (S.S.A. July 2, 1996) (emphasis in original).  "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."  *Id.*

In support of his contention that the RFC assessment should have included a bathroom-break limitation, Mr. E cites testimony he provided at the hearing that one of the reasons he

cannot work is because he needs to be "attached" to a bathroom, taking two to seven trips there per day.  (Pl.'s Br. 11, Doc. No. 16; *see also* Tr. 105.)  Mr. E also points to evidence showing symptoms of his liver disease—ascites, varices, and abnormal blood work—necessitate his use of medications causing more frequent urination and more frequent, soft stool.[3]  (Pl.'s Br. 10–11, Doc. No. 16; *see also* Pl.'s Reply Br. ("Reply Br.") 2, Doc. No. 21.)

In response, the Commissioner argues the ALJ's decision is supported by substantial evidence.  (Def.'s Answer Br. 7 ("Answer Br."), Doc. No. 20.)  According to the Commissioner, the ALJ adequately considered both Mr. E's testimony regarding his bathroom needs and the required medications necessitating frequent bathroom use.  (*Id.* at 8.)  The Commissioner maintains that, given the lack of evidence supporting Mr. E's subjective statement about bathroom use, the ALJ did not err in discounting it.  (*Id.*)

The ALJ decision cites to Mr. E's testimony that "he needs to 'be attached' to a bathroom, and that his medications make him need to use the restroom frequently, from two to

---

[3] In discussing his ascites, varices, and liver impairment in the RFC section of his brief, Mr. E appears to be arguing the ALJ should have considered that the medications to treat these conditions require frequent trips to the bathroom.  (*See* Pl.'s Br. 11, Doc. No. 16.)  This argument is addressed in this section.  If, instead, Mr. E is trying to challenge the RFC assessment itself with regard to ascites, varices, and liver impairment, he needs to point to a specific limitation that should have been included in the RFC based on the symptoms related to these conditions. Because he did not do this, the court is left with nothing to consider.  *See McAnally v. Astrue*, 241 Fed. App'x 515, 518 (10th Cir. 2007) (unpublished) (agreeing with the lower court's finding that the claimant "has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitations" (alteration in original)); *see also* Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *8 (S.S.A. July 2, 1996) ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.").

seven times a day."  (Tr. 81; *see also id.* at 84 (citing a July 2017 treatment note indicating that "claimant remained on diuretics and took lactulose" and a November 2017 treatment note indicating Mr. E should continue his current medications).)  In support of her decision not to include an additional limitation for bathroom use, the ALJ considered a 2018 treatment note indicating Mr. E has one to two "normal daily bowel movements." (*Id.* at 84–85.)  Nonetheless, to address Mr. E's need for bathroom breaks, the ALJ included a limitation in the RFC assessment that Mr. E "needed an indoor work environment with access to indoor plumbing." (*Id.* at 81.)

Mr. E contends the ALJ erred in light of this record by including no limitation for bathroom breaks in the RFC assessment and by failing to discuss why such a limitation was not included.  (Pl.'s Br. 11, Doc. No. 16.)  Although Mr. E classifies this as "legal error," the argument raises both a legal and a factual question.  Factually, the question is whether the ALJ's RFC finding that Mr. E needed to work indoors and have access to indoor plumbing is supported substantial evidence.  Legally, the question is whether it is sufficiently clear from the ALJ's decision why she did not include a bathroom-break limitation in the RFC assessment.

Mr. E relies on two cases in support of his argument that the ALJ's decision constituted error.  In the first case, *Ledesma v. Berryhill*, the court reversed and remanded because the ALJ's findings were not included in the RFC assessment.  No. SACV 16-882-AGR, 2017 U.S. Dist. LEXIS 82362, at *12–14 (C.D. Cal. May 30, 2017) (unpublished).  In *Ledesma*, the ALJ found the plaintiff had "unexpected episodes of diarrhea and bowel urgency."  *Id.* at *12 (internal quotation marks omitted).  This finding was supported by a treating physician's opinion that the plaintiff required "immediate access to a restroom" due to loose bowel movements and medical records documenting six to eight bouts of diarrhea a day.  *Id.* at *13 (internal quotations

omitted).  The court remanded so the ALJ could include these findings in the RFC assessment and evaluate "whether the frequency or duration of bathroom breaks would exceed normal breaks."  *Id.* at *13–14.  In short, the legal error in *Ledesma* was that the ALJ's findings were not included in the RFC assessment.  *Id.* at *12–14.  Mr. E relies on this case for the proposition that access to a bathroom raises a different question than the need for frequent and unexpected bathroom breaks.  (Pl.'s Br. 12, Doc. No. 16.)

Mr. E relies on *Shewmake v. Colvin*, No. 15 C 6734, 2016 U.S. Dist. LEXIS 163357 (N.D. Ill. Nov. 28, 2016) (unpublished), in support of the same proposition.  (Pl.'s Br. 12, Doc. No. 16.)  In *Shewmake*, the court referenced multiple medical records showing the plaintiff's Crohn's disease caused "persistent and recurrent diarrhea that frequently caused him to go to the bathroom an inordinate number of times per day."  *Id.* at *34.  Based on this evidence, the court found the ALJ's decision was not supported by the substantial evidence.  *Id.* at *36.  The court also found the ALJ erred in not accounting for the frequency and duration of bathroom breaks required by the plaintiff, given the evidence supporting such limitations in the record.  *Id.*

Although the court agrees the question of access to a bathroom differs from the question of the need for frequent and unexpected bathroom breaks, the issues are somewhat related.  With regard to both Mr. E's need for bathroom breaks and his access, the court finds substantial evidence supports the ALJ's RFC assessment and finds her reasoning to be sufficiently clear.  Here, contrary to *Ledesma*, the ALJ's findings do not conflict with the limitations found in the RFC assessment.  Also, unlike in *Shewmake*, the only evidence supporting Mr. E's claim that he needs to use the bathroom from two to seven times per day is his own testimony.  Mr. E's claim of using the bathroom up to seven times a day finds no support in the medical records and, presumably, using the bathroom two or three times a day falls in a normal range.  Although Mr.

10

E takes medication to increase urinary frequency and to soften his stool, he did not point to any medical records indicating the medication increases his bowel or urinary output beyond what would be considered normal.  The ALJ's consideration of the treatment note indicating Mr. E has normal bowel movements is sufficient to make clear why she did not include a bathroom-break limitation in the RFC assessment and to preclude a finding of legal error.  Given that substantial evidence supports the ALJ's decision to consider, but discount, Mr. E's subjective contentions as inconsistent with the medical records, the court will not disturb the ALJ's determination.  This is particularly true where the ALJ included a limitation to account for Mr. E's bathroom needs, insofar as they are supported by medical records.  (*See* Tr. 80–81.)

Relatedly, Mr. E alleges he suffers confusion if he cannot use the bathroom as frequently as required, and he complains that the ALJ failed to include a limitation for confusion in the RFC assessment.  (Pl.'s Br. 13, Doc. No. 16; Reply Br. 12, Doc. No. 21.)  The nature of this claim is unclear because it appears to be incidental to and linked to Mr. E's need for bathroom access. (Reply Br. 12–13, Doc. No. 16.)  Regardless, the ALJ considered subjective reports from Mr. E that he had problems with fatigue, memory, and confusion.  (Tr. 82–84.)  The treatment notes relied upon by the ALJ indicate an intact memory.  (Tr. 652, 775.)  This supports the limitation in the RFC assessment providing that "[m]entally, he was able to understand, remember, and carry out short, simple instructions."  (Tr. 81.)  The ALJ found Mr. E's mental impairments supported unskilled work, for which "concentration is not critical."  (*See* Tr. 86.)  *See also* POMS DI 25020.010 § (B)(3), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (the capacity to perform unskilled work includes the ability to "maintain attention for extended periods of 2-hour segments (concentration is not critical)").  In light of this, the court finds the

mental limitations provided by the ALJ with respect to confusion are supported by substantial evidence.

In sum, the court finds the ALJ's limitation that Mr. E required work in an indoor environment "with access to indoor plumbing" is supported by substantial evidence, and the ALJ did not err in declining to include an additional limitation for frequent bathroom use in the RFC assessment.  Further, the court finds the basis for the ALJ's conclusions is sufficiently clear from the decision.  Likewise, the court finds the ALJ adequately considered Mr. E's mental impairments and accounted for them in her RFC assessment.

### B.  Medical Opinion Evidence

Next, Mr. E argues the court must remand the case because the ALJ failed to explain what weight she gave to the "treating source" opinions of Dr. Eliason, Dr. Swigert, and Dr. Banks, and, to the extend she discounted those opinions, failed to explain her reasons for doing so.  (Pl.'s Br. 13, Doc. No. 16).  Mr. E points out that "multiple treating specialists felt that his impairments resulted in stricter limitations than those found by the ALJ."  (Reply Br. 5, Doc. No. 21.)  He contends that by failing to make clear why she accepted certain portions of treating physicians' opinions and rejected others, the ALJ committed legal error.  (*Id.* at 6.)

The Commissioner contends the ALJ provided clear reasons for providing less weight to these treating source opinions.  (Answer Br. 9–11, Doc. No. 20.)  With respect to each physician, the Commissioner argues their opinions were not supported by their treatment notes.  (*Id.* at 10–11.)  Noting Mr. E's testimony that he filled out the form with Dr. Eliason, the Commissioner argues the ALJ discounted Dr. Eliason's opinion in particular because "it appeared to be based

solely on Plaintiff's subjective report." (*Id.* at 9–10.)  Overall, the Commissioner argues the ALJ

provided good reasons for the weight given to the opinions of these treating sources.  (*Id.* at 11.)

Opinions from treating sources are generally given more weight than opinions from non-

treating sources. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  In evaluating a

treating physician's medical opinions, the ALJ must follow a "sequential two-step inquiry."

*Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  First, the ALJ must determine whether

the opinion deserves "controlling weight."[4]  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.

2003).  The ALJ must give an opinion "controlling weight" if it is (1) "well-supported by

medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with

other substantial evidence on the record." *Id.* (quotations omitted).  If the opinion fails to satisfy

either of these requirements, the ALJ is not required to give it controlling weight. *Id.*  While an

express finding with respect to this first question was previously considered mandatory, the

Tenth Circuit has more recently declined to remand where it could determine from the ALJ's

decision that it "implicitly declined to give the opinion controlling weight."  *See Mays v. Colvin*,

739 F.3d 569, 575 (10th Cir. 2014).

Second in the sequential analysis, if the ALJ does not give a treating source opinion

controlling weight, the ALJ must consider the level of deference to give it, using the factors in 20

C.F.R. §§ 404.1527 and 416.927.  These factors include:

> the length of the treatment relationship and the frequency of examination; (2) the
> nature and extent of the treatment relationship, including the treatment provided
> and the kind of examination or testing performed; (3) the degree to which the

---

[4] The Social Security Administration revised 20 C.F.R. §§ 404.1527 and 416.927 regarding the
evaluation of treating physician opinions for claims filed on or after March 27, 2017.  *See*
Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at *5844–45.
Mr. E filed his SSDI application in December 2015, so the court applies the rules and regulations
in place prior to the March 27, 2017 rule change.  (Tr. 237–40.)

> physician's opinion is supported by relevant evidence; (4) consistency between the
> opinion and the record as a whole; (5) whether or not the physician is a specialist
> in the area upon which an opinion is rendered; and (6) other factors brought to the
> ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotations omitted).  The ALJ's decision need not

"apply expressly each of the six relevant factors in deciding what weight to give a

medical opinion."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  However,

the ALJ must "'give good reasons' in the notice of determination or opinion for the

weight that is given the treating physician's opinion."  *Doyal v. Barnhart*, 331 F.3d 758,

762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)).  The court may not supply

possible reasons for assigning the treating physician opinions the weight the ALJ did but

may only evaluate the ALJ's decision on her stated reasons.  *See Robinson v. Barnhart*,

366 F.3d 1078, 1084–85 (10th Cir. 2004) (abrogated by statute on other grounds as stated

in *Walls v. Berryhill*, No. CIV-18-464-STE, 2019 U.S. Dist. LEXIS 50369, at *8 (W.D.

Okla. Mar. 26, 2019).  The ALJ's reasons must be "sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reason for that weight."  *Watkins*, 350 F.3d at 1300 (internal quotation

marks omitted).

The court evaluates the ALJ's analysis of the treating physician opinions of Dr.

Eliason, Dr. Swigert, and Dr. Banks in turn.

### 1. *Kyle Eliason, MD*

Dr. Kyle Eliason is Mr. E's gastroenterologist.  (Tr. 86.)  He provided a treating source

statement indicating Mr. E has "chronic liver disease with portal hypertension, and ascites and

esophageal varices."  (*Id.* at 86–87 (citing Tr. 734).)  The ALJ took note of portions of Dr.

Eliason's treating source statement, including his determination that Mr. E "could stand/walk for

an hour, and lift 10-15 pounds." (*Id.* at 87 (citing Tr. 732–39).)  However, the ALJ found Dr.

Eliason's prior medical examinations did not support these limitations, given a lack of noted

deficiencies in Mr. E's strength. (*Id.* (citing Tr. 665–71 & 740–55).)  The ALJ did find Mr. E's

abdominal pain to be a reasonable ground for limiting Mr. E's RFC with respect to lifting. (*Id.* at

80, 87.)  The ALJ noted that Dr. Eliason completed the treating source statement with Mr. E, but

did not explain how this affected her analysis, if at all. (*Id.* at 87.)  In conclusion, the ALJ gave

Dr. Eliason's opinion "some weight." (*Id.*)

 The court finds the ALJ's analysis of Dr. Eliason's opinion wanting.  Although it is clear

the ALJ did not give Dr. Eliason's opinion controlling weight, the ALJ largely failed to address

the six factors set forth in 20 C.F.R. §§ 404.1527 and 416.927 for determining the level of

deference to provide a treating source opinion.  As it relates to Mr. E's liver disease, the ALJ's

decision does not address the length of the treatment relationship or the frequency of Dr.

Eliason's examination of Mr. E, the treatment provided and examination or testing performed, or

the consistency between Dr. Eliason's opinion and the record as a whole.  *See Watkins*, 350 F.3d

at 1301.  The ALJ's only justification for discounting Dr. Eliason's opinion is her conclusion that

Dr. Eliason's examinations do not support the limitations he suggested because they have "not

noted any deficiencies in the claimant's strength." (*See* Tr. 87.)  This appears to reflect the

ALJ's conclusion that Dr. Eliason's opinion is not supported by relevant evidence.  *See Watkins*,

350 F.3d at 1501.  Although this is a necessary consideration when determining what weight to

give a treating source's opinion, the ALJ's conclusion in this regard is not supported by

substantial evidence nor is her reasoning sufficiently clear for purposes of later review.

 First and foremost, the ALJ's decision on this point is not supported by substantial

evidence.  Dr. Eliason's opinion about Mr. E's capacity to work was based on specific

abnormalities and symptoms related to his end-stage liver disease, not to Mr. E's strength.  (Tr. 732–39.)  Consequently, the ALJ's reason for disregarding the opinion—that examinations did not document deficiencies in Mr. E's strength—misses the point.  The Commissioner claims the ALJ was justified in discounting Dr. Eliason's opinion because the ALJ concluded Dr. Eliason based his opinion on Mr. E's subjective reports.  (Answer Br. 10, Doc. No. 20.)  This misconstrues the ALJ's decision.  The ALJ noted only that Dr. Eliason completed his statement with Mr. E at an appointment.  (Tr. 87.)  The ALJ made no finding, however, that Dr. Eliason's assessment was based on subjective input from Mr. E and, thus, lacked credibility.  (*See id.*)  Indeed, the ALJ gave no apparent significance to the fact that Dr. Eliason completed his statement in Mr. E's presence.  This fact, without more, cannot be grounds to discount the weight of a treating physician's opinion.

Moreover, on review, the reasons the ALJ gave Dr. Eliason's "some weight" as opposed to "controlling weight" are not clear.  *See also Watkins*, 350 F.3d at 1301.  Because the only basis in the decision for discounting Dr. Eliason's opinion is the unrelated reference to Mr. E's strength, the ALJ's reasoning for not giving Dr. Eliason's opinion controlling weight was not sufficiently articulated for the court to find it justified.  *See Watkins*, 350 F.3d at 1300; *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

In short, the court finds the ALJ's conclusion is not supported by substantial evidence.  Further, the court finds error where the ALJ did not adequately perform the required legal analysis as it pertains to Dr. Eliason and did not adequately explain in the decision her reasons

for discounting his opinion.  For these reasons, the court remands the case for more complete consideration.

### 2.   *Jason Swigert, MD*

Dr. Jason Swigert is one of Mr. E's primary care providers and has treated Mr. E every two to three months since March 2016.  (Tr. 87 (citing Tr. 648).)  Dr. Swigert provided a treating source statement on May 12, 2016, indicating Mr. E has "liver cirrhosis, diabetes type 2, portal hypertension, esophageal varices and rectal varices, history of alcoholism . . . not in remission, [and] ascites controlled by meds."  (*Id.* at 648.)  Dr. Swigert found that Mr. E had "permanent liver damage but has stabilized."  (*Id.*)  Dr. Swigert also noted that Mr. E has vein dilation, putting him at risk of bleeding in his esophagus and rectum.  (*Id.*)  He concluded Mr. E "has fatigue, gynecomastia, breast pain due to meds, [and] frequent diarrhea."  (*Id.*)  Dr. Swigert observed that, with medication, Mr. E's mental functioning is "more clear."  (*Id.*)  Dr. Swigert noted that Mr. E was "unable to stand more than 4 [hours]."  (*Id.*)  He opined that Mr. E's symptoms would keep him from remaining on task twenty percent or more of the time, and concluded Mr. E would likely be absent from work four or more days during a month.  (*Id.* at 648–49.)  Based on this, Dr. Swigert opined that Mr. E fell within a "less than sedentary" functional capacity and was unable to work "in a competitive environment on a full-time sustained basis" because of his "chronic fatigue, mental slowing, chronic tailbone pain, [and] arthritis pain."  (*Id.*)  Dr. Swigert indicated his opinions were informed by Mr. E's medical history, physical exams, consultative medical exams, progress notes, laboratory reports, and imaging studies.  (*Id.*)

The ALJ restated portions of Dr. Swigert's treating source statement, including Dr. Swigert's opinion that Mr. E would be limited to "less than sedentary exertional activities," was

unable to stand more than four hours, would be "off task 20 % or more of the day," and "absent four or more days per month" due to his impairments.  (Tr. 87, 648–51.)  The ALJ also considered Dr. Swigert's opinion that Mr. E would work at less than fifty percent efficiency due to his "chronic fatigue, mental slowing, chronic tailbone pain, and arthritis pain."  (*Id.* at 87, 649.)  However, the ALJ declined to give Dr. Swigert's opinion controlling weight, finding his opinions "out of proportion" with his treatment notes.  The ALJ specifically cited both a March 22, 2016 and a May 12, 2016 treatment note in support of this conclusion.  (*Id.* at 87 (citing Tr. 565–77 & 651–54).)  From these treatment notes, the ALJ highlighted physical examinations showing Mr. E had normal strength, tone, and gait, and the fact that he was prescribed medication to address his chronic pain and fatigue.  (*Id.* at 87.)  The ALJ gave Dr. Swigert's opinion "some weight."  (*Id.*)

Similar to the ALJ's analysis of Dr. Eliason's opinion, the analysis of Dr. Swigert's opinion is lacking.  The ALJ did not sufficiently evaluate whether Dr. Swigert's opinion should be given controlling weight.  *Krauser*, 638 F.3d at 1330.  Likewise, the ALJ failed to consider most of the factors for determining the level of deference to provide the treating source opinion when giving the opinion less than controlling weight.  *See Watkins*, 350 F.3d at 1301.  The only factors the ALJ considered are the length of the treatment relationship and frequency of examination, and "the degree to which the physician's opinion is supported by relevant evidence."  (*Id.*)  The ALJ's conclusion that Dr. Swigert's opinion was unsupported by his treatment notes is problematic.  Specifically, the ALJ's reliance on Dr. Swigert's medical records with respect to Mr. E's strength, tone, and gait is misplaced.  Whether Mr. E has normal strength, tone, and gait says nothing about his capacity for work based on his liver disease and its related complications.  Because these observations are unrelated, they do nothing to lessen the weight of

Dr. Swigert's opinion.  Similarly, the ALJ's reliance on medical records indicating Mr. E was prescribed medication for pain and fatigue do not support an implied conclusion that the medications effectively manage these symptoms.  (*See* Tr. 651–52.)  In fact, the record suggests the opposite: Mr. E reported pain during May 12, 2016 exam, despite taking Lyrica for pain management.  (*See id.* at 651.)  Put differently, the ALJ's analysis is unsupported by substantial evidence.

Moreover, the limitations listed in the ALJ's RFC assessment run counter to Dr. Swigert's assessment of Mr. E's limitations.  This suggests the ALJ gave Dr. Swigert's opinion no weight, rather than "some weight."  Also, despite claiming she gave it "some weight," in concluding her analysis of the medical opinion evidence, the ALJ excludes any mention of having relied on Dr. Swigert's testimony.  (*See* Tr. 87 ("[T]he above residual functional capacity assessment is supported by how the claimant has been treating his impairments, the objective medical evidence, the assessments of the State agency medical consultants, the opinions of Dr. Perino and Dr. Eliason, and the record as a whole.").)  Coupled with the fact that the ALJ's decision involves no evaluation of the other factors relevant to the weight assigned to Dr. Swigert's opinion as a treating physician, the court is unable to ascertain why the ALJ only gave Dr. Swigert's opinion "some weight" or, effectively, no weight.  This leaves the ALJ's decision insufficiently specific to make clear to the reviewing court what weight the ALJ assigned and the reasons for it.

In short, the court finds the ALJ did not sufficiently analyze the degree to which Dr. Swigert's opinion is supported by relevant evidence and failed to sufficiently articulate the

weight given to his opinion and the reasons for that weight.  Consequently, the Court remands the case for more complete consideration.[5]

### 3.   Duane Banks, MD

Dr. Duane Banks is a psychiatrist who started treating Mr. E in October 2017.  (Tr. 85.) Dr. Banks submitted a treating source statement indicating Mr. E had been diagnosed with chronic bipolar disorder, generalized anxiety disorder, and PTSD.  (*Id.* at 86 (citing Tr. 756).) Dr. Banks indicated Mr. E had mild to moderate functional limitations with respect to a variety of work-related tasks, such as following instructions, recognizing and correcting mistakes, doing multi-step tasks, and cooperating with others.  (*Id.* at 757.)  Based on psychological evaluations, he opined Mr. E would be absent from work four or more days a month and would be "off-task" twenty percent or more of the time.  (*Id.*)

The ALJ recounted these limitations in her opinion.  (*Id.* at 86.)  She then concluded "Dr. Banks' opinion is out of proportion to his own treatment notes," in which Dr. Banks indicated Mr. E's "cognition/attention/memory/concentration was grossly intact."  (*Id.*)  The ALJ also considered medical records indicating Mr. E was responding to the medications prescribed for his mental impairments.[6]  (*Id.*)  Based on these inconsistencies, and because the ALJ accounted

---

[5] The ALJ's failure to adequately evaluate the opinions of Dr. Eliason and Dr. Swigert does not constitute harmless error.  The court may decline to remand under the harmless error doctrine where it can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way".  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005).  Here, that is not the case.

[6] Specifically, the ALJ cites to medical records indicating Mr. E's "mood swings" had been lessened by Risperdal, although it had contributed to weight gain.  (*See* Tr. 758.)

for the impact of Mr. E's hepatic encephalopathy on his cognitive function in the RFC, the ALJ gave Mr. Bank's opinion "little weight."  (*Id.*)

The ALJ appears to have implicitly declined to give Dr. Banks' opinion "controlling weight."  *See Mays*, 739 F.3d at 575.  The court finds no error in this approach because, unlike the analyses of Dr. Eliason's and Dr. Swigert's opinions, the treating notes the ALJ found to be out of proportion with Dr. Banks' proposed limitations were related to the same underlying mental conditions forming the basis for Dr. Banks' opinion.  Where the ALJ's decision sufficiently makes clear the weight the ALJ gave to Dr. Bank's opinion and the reason for this weight—and the decision is supported by substantial evidence—the court finds no error.

The court also finds the ALJ adequately considered the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when deciding to give Dr. Banks' little weight.  First, the ALJ considered Dr. Banks' relationship with Mr. E and the frequency of examination—namely, three examinations for medication management related to "bipolar disorder, generalized anxiety disorder, PTSD, and a history of substance dependence and abuse."  (Tr. 85–86.)  Second, the ALJ considered the nature of the treatment relationship and diagnostics performed: serving as Mr. E's "psychiatric medication management provider" and diagnosing Mr. E with "bipolar disorder, generalized anxiety disorder and PTSD."  Third, the ALJ considered the support for Dr. Banks' opinions in the underlying evidence, finding Dr. Banks' recommended limitations to be inconsistent with his own treatment notes.  Fourth, the ALJ considered the consistency of the opinion with the overall record, noting Mr. E has responded well to prescribed medications for

his mental limitations.[7] Finally, the ALJ addressed Mr. E's mental functioning due to hepatic encephalopathy in the RFC by considering Mr. E's complaints of confusion and poor memory as compared to his exam showing he was "alert and oriented to person, place, and time and had normal short-term and long-term memory." (*Id.* at 83.) After considering Mr. E's mental health history, including treatment notes from Dr. Banks, the ALJ legitimately concluded Mr. E's "mental impairments support the limitations to unskilled work in the residual functional capacity." (*Id.* at 86.)

In giving Dr. Bank's testimony "little weight," the court finds the ALJ adequately undertook the required two-step process and effectively rejected Dr. Banks' opinions, as is her prerogative. The court finds no reversible legal error in the ALJ's evaluation of Dr. Bank's opinion.

### C. Jobs in the National Economy and Appeals Council Review

In the fifth sequential step, the ALJ determined that jobs existed in sufficient numbers in the national economy that Mr. E could perform, given his age, education, work experience, and residual functional capacity. (Tr. 88–89.) Given the court's finding that this case must be remanded for proper consideration of the opinions of Dr. Eliason and Dr. Swigert, the court

---

[7] Mr. E asserts that the ALJ failed to consider his weight gain as a medication side effect, but the ALJ did explicitly consider this in her review of the medical records. (Tr. 85–86.) Mr. E also claims he had to stop his medications because of weight gain and that this fact was not adequately considered by the ALJ. (Pl.'s Br. 15-16, Doc. No. 16.) However, the record shows only that Dr. Banks' plan was to try to take Mr. E off Risperdal, depending on his response to a replacement medication. (Tr. 758.) The ALJ considered this as well. (*Id.* at 86.)

declines to consider Mr. E's challenge under this step.  If these treating source opinions are given

different weight on remand, the analysis under this step will necessarily change.

      Similarly, further analysis of the treating physicians' opinions could alter the issues

raised by Mr. E with respect to the Appeals Councils' denial of his request for review.

Consequently, the court declines to consider this issue as well.

## VI.    CONCLUSION

      For the foregoing reasons, the court REMANDS the ALJ's decision for further

consideration of the treating physicians' opinions.  Upon remand, the claim will be sent to the

ALJ, who will reassess the treating physicians' opinions and any resulting implications on Mr.

E's residual functional capacity.  The ALJ will offer Mr. E an opportunity for a hearing, take any

necessary action to complete the administrative record, and issue a new decision.

      DATED this 9th day of September, 2020.

                     BY THE COURT:

                     _Daphne A. Oberg_____

                     Daphne A. Oberg
                     United States Magistrate Judge